IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :   CASE NO.  1:25-MJ-00734 |
| | : |
| SCOTT ALLEN BOLGER | : |
| | : |
| Defendant. | : |

**DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

The Defendant, Scott Allen Bolger, by counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully requests that the Court revoke the order of detention imposed by the magistrate judge on December 30, 2025.  Mr. Bolger also requests an expedited hearing of this matter pursuant to 18 U.S.C. § 3145(b), which requires that such motions be determined promptly.

Mr. Bolger is a 33-year-old former Eagle Scout with no prior criminal record of any kind.  He resides with his girlfriend of over four years in McLean, Virginia, and he has resided in Northern Virginia for 6 years.  He works as a digital marketer and has years of experience in that field.  Both of his parents are government employees with many years of public service.  They are fully supportive of Mr. Bolger and prepared to serve as third party custodians if necessary.

The Pretrial Service Bond Report recommends release on a personal recognizance bond with enumerated conditions, such as pretrial services supervision.[1]  Notably, the report does *not* recommend more stringent conditions of release, such as assigning a third-party custodian, electronic monitoring, or home detention.  This recommendation is bolstered by the evidence-based Pretrial Risk Assessment (PTRA) tool, which categorizes Mr. Bolger's risk category as

---

[1] *See* Addendum to Pretrial Service Bond Report.

Category 1, the lowest risk level. Research indicates that pretrial defendants who fall within this category have a 95% likelihood of success on pretrial release.

The factors the Court must consider under 18 U.S.C. § 3142 all militate in support of releasing Mr. Bolger with appropriate conditions. So too do the precedents in similar cases. Conditions of release exist that will reasonably assure Mr. Bolger's appearance in Court and the safety of the community. Those include not only the conditions recommended by pretrial services, but other restrictions the Court has at its disposal, such as electronic monitoring, home detention, and restrictions on the use of electronic devices.

## **ARGUMENT**

### I.     **Procedural History**

On December 26, 2025, Mr. Bolger was charged by Criminal Complaint with making an interstate threat, in violation of 18 U.S.C. § 875(c), and making a false statement, in violation of 18 U.S.C. § 1001. The maximum penalty for each of these offenses in up to five years. Mr. Bolger had his initial appearance on December 29, 2025, and a temporary detention order was entered. On December 30, 2025, the magistrate court entered an order of detention pending trial, denying Mr. Bolger's request for pretrial release. This motion to revoke follows.

### II.    **Legal Standard**

Pursuant to 18 U.S.C. § 3145(b), this Court may revoke a detention order issued by a magistrate judge upon motion by the defense. The district judge's review of a magistrate judge's detention order is *de novo*. *See United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989). The district court must make its own *de novo* determination of the facts with no deference to the findings of the magistrate judge. *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *United States v. Walters*, 89

F.Supp.2d 1217, 1219-20 (D. Kan. 2000). In addition, the district court ultimately must decide the propriety of detention with no deference to the legal conclusions of the magistrate judge. *Id.*

It is well-settled that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act of 1984 therefore provides that a defendant must be released on their personal recognizance or an unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); *accord United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Even then, the Bail Reform Act directs the Court to order the pretrial release of the defendant subject to the condition that the person not commit a federal, state or local crime, and subject to "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community," unless the Court determines that no condition or combination of conditions will reasonably assure community safety and the defendant's appearance. 18 U.S.C. § 3142(c)(1).

Section 3142(e)(3) establishes a rebuttable presumption against release in specified cases, none of which apply here (a Controlled Substances Act violation with a maximum term of 10 years or more; an offense under §§ 924(c), 956(a), or 2332b; an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of 10 years or more is prescribed; an offense under 18 U.S.C. 1581 for which a maximum term of 20 years or more is prescribed; or an offense involved a minor victim under specified statutes).

Section 3142(f) in turn provides that a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will

3

reasonably assure the appearance of the person as required and the safety of any other person and the community—**(1)** upon motion of the attorney for the Government, in a case that involves— (A) a crime of violence. . . . " 18 U.S.C. § 3142(f). Although there does not appear to be any controlling Fourth Circuit case specifically holding that 18 U.S.C. § 875(c) constitutes a "crime of violence" under the Bail Reform Act, the Second Circuit has so held. *United States v. Dai*, 99 F.4th 136, 137 (2d Cir. 2024). Nonetheless, the statute requires the Court in such a case to simply determine whether any condition or combination of conditions of release will reasonably assure the safety of the community and the appearance of the defendant. It does not create a rebuttable presumption against release. Section 3142(e)(2) does create a rebuttable presumption in a case described in subsection (f)(1) of the section, but *only* if the judicial officer finds that the person has been *convicted* of a federal offense described in (f)(1) or an analogous state statute; the offense was committed while the person was on pretrial release; and a period of not more than five years has elapsed since the date of conviction or release from imprisonment. Those circumstances do not apply to Mr. Bolger.

As such, there is no rebuttable presumption against release here, and by extension, the default presumption *in favor* of pretrial release in the Bail Reform Act governs. *See United States v. Hightower,* No. 2:07mj153, 2007 U.S. Dist. LEXIS 23216, at *2 (E.D. Va. Mar. 13, 2007) (holding that a charge of conspiracy to interfere with commerce by threats of violence while committing robbery is a "crime of violence" but that it does not create a rebuttable presumption against release); *United States v. Chappelle*, 51 F. Supp. 2d 703, 705 (E.D. Va. 1999) (holding that a pending charge that constitutes a "crime of violence" authorizes the government to seek pretrial

detention but does not create a rebuttable presumption against release, unless the conditions in § 3142(e)(2) are met).[2]

In short, there is no rebuttable presumption against release in this case, and the Government bears the "ultimate burden of persuasion to show by clear and convincing evidence that the defendant is dangerous or by a preponderance of the evidence that he's a flight risk." *United States v. Vane*, 117 F.4th 244, 251 (4th Cir. 2024). The government has not met that burden here, and Mr. Bolger should be released with appropriate conditions as recommended by Pretrial Services.

### III. Release Conditions Exist That Will Reasonably Assure The Safety of The Community and Mr. Bolger's Appearance

Mr. Bolger seeks pretrial release to the residence he shares with his girlfriend, under the conditions recommended by the Addendum to the Pretrial Services Bond Report. Alternatively, Mr. Bolger is prepared to submit to more stringent conditions if the Court deems them necessary, including being released to the custody of his parents as third-party custodians, home detention, surrendering his passport, electronic monitoring, and restrictions on the use of electronic devices other than for work purposes. These conditions more than adequately serve to reasonably assure the safety of the community and Mr. Bolger's appearance in court.

---

[2] Even in the context of a statutory presumption case, the defendant would only have a burden of production to come forward with "some evidence" to contradict the presumption that no conditions exist that will reasonably assure the safety of the community and reasonably assure the defendant's appearance. *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'"). This burden of production "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). The defendant in a rebuttable presumption case simply has the burden to produce evidence "to suggest" that he is neither dangerous nor likely to flee if released on bail. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the "presumption by itself would be inadequate to prove dangerousness, so the prosecution must introduce other evidence in addition." *United States v. Cox*, 635 F. Supp. 1047, 1052 (D. Kan. 1986).

The Bail Reform Act provides: "The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning" the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Considering these factors, a combination of conditions of release as stated above would reasonably assure both the safety of the community and Mr. Bolger's appearance.

1. **The nature and circumstances of the offense charged and the weight of the evidence do not require detention.**

Mr. Bolger stands accused of making an interstate threat, in violation of 18 U.S.C. § 875(c), and making a false statement, in violation of 18 U.S.C. § 1001. The facts and circumstances of the alleged offense do not support a finding that no set of conditions can be imposed to reasonably assure the community's safety and Mr. Bolger's appearance.

First, the allegation at the heart of the threat charge is of a single text message sent from a Google voice number, without any overt acts in furtherance of the purported threat. There is no allegation that Mr. Bolger attempted to make any physical contact with the alleged victim, that he appeared at his place of work, that he sent subsequent messages, or that he did anything indicating an actual intent to cause harm. Nor is there any evidence that Mr. Bolger had any actual ability to cause harm; on the contrary, as the pretrial services report notes, there are no firearms in his residence, and he does not own or possess any.

Second, the nature of the charge of interstate threats does not by itself support pretrial detention. Courts have routinely granted pretrial release in cases involving serious allegations of interstate threats, including threats against the president. In *United States v. Peter Stinson*, 1:25-

mj-373 (E.D. Va. 2025), the defendant was charged with making threats against President Trump, in violation of 18 U.S.C. § 871. Stinson was alleged to have made *multiple* threatening statements against the president over a period of time, including writing, among other things: "somebody ought to do more than sue the orange mf's ass," "it involves a rifle and a scope . . .", "I'd be willing to pitch in $100 for a contract. Who wants to join me? We could solve the solvable part of this problem in a crack," "Would someone just pull the proverbial trigger, please," "I would do it. I would take the fall to save America. Too bad I don't have the operational skills to pull it off. I am willing to serve in a support capacity for someone else with the skills to take care of things," and "Yes, I would pull the trigger. Would you?" Stinson also identified himself online as a member of "Antifa", purported to own firearms, and posted on social media: "Target practice tonight. I set some [orange emoticon] on the railing. Let's shoot some oranges! Plink. Plunk. Boom. Bop." (Stinson used the orange emoticon to refer to President Trump throughout his posts). These statements are just a sample of the statements attributed to Stinson over an extended period of time. Nonetheless, Stinson was granted pretrial release with conditions, and he was ultimately acquitted at trial.

Unlike Stinson, Mr. Bolger is accused of making a single allegedly threatening statement—not a pattern of threats over a period of time. Unlike Stinson, Mr. Bolger does not possess any firearms. Unlike Stinson, Mr. Bolger never intimated that he was planning to or engaging in "target practice" involving the target of the alleged threat. Nor is Mr. Bolger accused of identifying with any broader movement or group accused of political violence or advocating violence. On balance, the circumstances in this case support release far more so than those in Stinson.

In many other comparable or far more serious cases, defendants in districts across the country have been routinely granted pretrial release after being charged with making interstate threats under 18 U.S.C. § 875(c) or under 18 U.S.C. § 876. *See, e.g.*, *United States v. Jackson Fleming*, 2:25-mj-173 (N.D. Indiana 2025) (granting release on unsecured bond to midshipman at Naval Academy charged for threatening "mass execution" of his former classmates, resulting in a lockdown of naval academy); *United States v. Chand Aaditya*, 5:24-mj-71280 (N.D. Ca. 2024) (granting pretrial release to defendant charged with sending direct messages to a U.S. Congressperson stating "I'm gonna shoot up ur office tomorrow u Palestinian scum," "Get ready," and "I'm gonna bring a gun to ur office tomorrow and shoot u and ur staff."); *United States v. Samuel Cundari*, 24-mj-3074 (C.D. Ill. 2024) (granting unsecured bond to defendant accused of sending threats to two Illinois State Representatives stating, "Our patience grows short with you. The day we put your kids' feet first into a woodchipper so we can enjoy their last few screams is coming," and posting, " "I sure hope NOBODY leaves a pressure cooker filled with bail bearings, glass, and nails, filled with diesel fuel and fertilizer, with the over pressure safety valve disabled, near a natural gas line line [sic]."); *United States v. Deep Alpesh Kumar Patel*, 8:23-mj-2359 (M.D. Fl. 2023) (granting pretrial release with conditions to defendant accused of sending threatening voicemail to World Jewish Congress stating, *inter alia*, "If I had a chance I would kill every single one of you Israelis."). In short, the nature of the charged offense does not require pretrial detention, and defendants in more serious cases than this have been routinely released pretrial.

Third, the weight of the evidence does not require detention. "[T]he weight of the evidence is the least important of the various factors" to be considered by the Court in determining whether conditions exist which will reasonably assure the appearance of Mr. Bolger. *United States v.*

*Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (panel opinion by Kennedy, J.). This is so because Mr. Bolger is presumed to be innocent. *See* § 3142(j). Moreover, pretrial detention is explicitly not permitted to be imposed as "punishment" for alleged past criminal conduct, no matter how well established. *United States v. Salerno*, 481 U.S. 739, 747 (1987). On the contrary, "[t]he [Bail Reform Act], by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist *going forward*." *United States v. Madoff*, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009) (emphasis added). In other words, the weight of the evidence is relevant only to the extent that it supports a finding that Mr. Bolger presents an unreasonable risk of flight or danger.

To establish the charge of interstate threats under § 875(c), the Government must prove the following:

(1) the defendant knowingly communicated a statement in interstate commerce that

(2) contained a "true threat" that is not protected by the First Amendment; and

(3) that the defendant subjectively intended the communication as a threat.

*United States v. Bullard*, No. 2:25-cr-5, 2025 LX 247709, at *4 (E.D. Va. Apr. 2, 2025).

First Amendment considerations require the Government to prove that the statement in question is a "true threat" constituting a "serious expression conveying that a speaker means to commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023); *Virginia v. Black*, 538 U.S. 343, 347 (2003). The "true" in that term distinguishes what is at issue from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow. *Watts v. United States*, 394 U.S. 705 (1969).

In *Watts*, an eighteen-year-old Vietnam draftee, in discussing police brutality at a rally,

9

stated: "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. at 706. The Supreme Court overturned Watts' conviction for making a threat against the President under 18 U.S.C. § 871, holding that the government must prove the defendant made a "true threat," not just "political hyperbole." *Id.* at 708. In its holding that the statement was not a "true threat," the Court specifically emphasized "the expressly conditional nature of the statement." *Id.* at 708.

In *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011), the court reversed the defendant's conviction for making threats to President Obama. *Id.* at 1119. There, the defendant wrote on an internet forum: "Re: Obama fk the niggar, he will have a 50 cal in the head soon." About twenty minutes later, he posted another statement on the same message board: "shoot the nig country fkd for another 4 years+, what nig has done ANYTHING right???? long term???? never in history, except sambos." When law enforcement searched his home they recovered a .50 caliber rifle and ammunition. Reversing his conviction for making threats against a presidential candidate, the court held:

> [N]either statement constitutes a threat in the ordinary meaning of the word: 'an expression of an intention to inflict . . . injury . . . on another.' *Webster's Third New International Dictionary* 2382 (1976). The "Obama fk the niggar" statement is a prediction that Obama 'will have a 50 cal in the head soon.' It conveys no explicit or implicit threat on the part of Bagdasarian that he himself will kill or injure Obama. Nor does the second statement impart a threat. '[S]hoot the nig' is instead an imperative intended to encourage others to take violent action, if not simply an expression of rage or frustration. The threat statute, however, does not criminalize predictions or exhortations to others to injure or kill the President.

*Id.* at 1119.

In this case, the statement at issue is conditional ("*Step on U Street* and . . ."), and it does not clearly imply harm will come from the speaker, as opposed to being a statement about what a third party might do, similar to the statements in *Bagdasarian*. The recipient of the statement is a

10

political appointee of the president. And the condition stated within the text is not something likely to happen—there is no indication that the recipient was expected to soon be on U Street such that the conditional statement was imminent in nature. The vagueness of the statement, its conditional nature, and its political context, are all critical factors, because the First Amendment protects speech that is not clearly and unambiguously a "true threat" that constitutes a "serious expression conveying that a speaker means to commit an act of unlawful violence." *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 900 n.28, 928 (1982) (holding statement by an N.A.A.C.P. official threatening to break the necks of black residents if they violated a boycott on stores that enforced segregation "did not transcend the bounds of protected speech set forth in Brandenburg").

What is more, the boundaries of protected political speech have been pushed in recent years by political figures across the political spectrum, including President Trump, who has made similar statements without facing criminal prosecution.[3]

- Shortly before the November 2024 election, he said that former Representative Liz Cheney should have guns "trained on her face."[4] "Let's put her with a rifle standing there with nine barrels shooting at her, okay? Let's see how she feels . . . when the guns are trained on her face," he said.

- He suggested in a Truth Social post that Former Chairman of the Joint Chiefs of Staff Mark Milley should be put to death, writing that Milley's phone call to reassure China in the aftermath of the January 6, 2021 storming of the Capitol was "an act so egregious that, in

---

[3] When he was prosecuted in New York, Georgia, Washington, D.C., and Florida for unrelated conduct, President Trump was released on bond in each case notwithstanding his history of politically violent rhetoric and seemingly threatening statements targeting his political opponents.
[4] https://www.theatlantic.com/politics/archive/2024/11/trump-liz-cheney-war/680485/

11

times gone by, the punishment would have been DEATH."[5]

- At a 2016 rally, Trump told the crowd: "if you see somebody getting ready to throw a tomato, knock the crap out of 'em, would you? Seriously," he said to cheers from the audience. "Just knock the hell — I promise you, I will pay for the legal fees. I promise. I promise. It won't be so much because the courts agree with us, too."[6]

- While President Trump's speech on January 6, 2021 encouraging attendees to "fight like hell" and march to the Capitol resulted in impeachment proceedings, all criminal charges arising from that incident against President Trump were dismissed, demonstrating the high bar for criminalizing political speech.

- In 2023, President Trump posted on Truth Social warning of "potential death and destruction" if he were criminally charged,[7] yet another example of political speech that could be interpreted as a call for violence but was nonetheless constitutionally-protected speech.

Stated simply, the weight of the evidence in this case, particularly in light of the First Amendment hurdles the Government must overcome in seeking to punish speech, is not substantial in this case, and even if it were, the weight of the evidence is the least significant of the factors for determining the appropriateness of pretrial release. Defendants accused of making far more threatening statements have routinely been granted pretrial release. Nothing in this case uniquely

---

[5] https://www.theatlantic.com/ideas/archive/2023/09/trump-milley-execution-incitement-violence/675435/
[6] https://www.politico.com/blogs/iowa-caucus-2016-live-updates/2016/02/donald-trump-iowa-rally-tomatoes-218546
[7] https://www.nbcnews.com/politics/donald-trump/trump-warns-potential-death-destruction-charged-hush-money-probe-rcna76500

sets it apart as more egregious or supports the conclusion that no set of conditions can be imposed to meet the objectives of the Bail Reform Act.

### 2. Mr. Bolger's history and characteristics support pretrial release.

As noted in the pretrial services bond report, Mr. Bolger is 33 years old and has lived with his girlfriend in McLean, Virginia for four years. He has strong ties to this community and has lived in Northern Virginia for six years. He has strong family support, including the unwavering support of his parents, who are prepared to serve as third-party custodians and have been deemed to be suitable custodians by pretrial services. He had stable employment from 2019 to 2024, and he has been self-employed in the same field since leaving his last job until the date of his arrest. He graduated from Marshall University, *cum laude*, earning a bachelor's degree in journalism. Aside from some limited marijuana use noted in the pretrial services report, he does not have a history of substance abuse or addiction issues.

Earlier in his youth, he achieved the highest rank in Scouting America as an Eagle Scout, an accomplishment that requires dedication and service to the community and specifically requires obtaining at least 21 merit badges and the completion of a major community service project. Only approximately 4-6% of Scouts ever make the rank of Eagle. In addition to his scouting achievements, Scott Bolger was always actively involved in extracurricular activities, including playing clarinet, acoustic guitar, and piano, participating in the marching band, in which he won many competitions, and playing on his school's basketball team. In high school, he earned the Honor Roll every year, played football, and joined the track team. He also headed the Education Department for The Future Business Leaders of America. He gained work experience during high school working on a farm in West Virginia during the summer, in addition to working for a landscape business, where he worked on maintaining a historical property in Charles Town,

West Virginia. Over several years, he volunteered his time on special projects, such as "Adopt A Road," in addition to helping his family collect food for the homeless during holidays—a Bolger family tradition. During the summers while in high school and his early years in college, he volunteered and worked with Jefferson County softball and baseball Leagues, where he umpired games.

In college, he volunteered his time to the Marshall University school newspaper, traveling and covering sports stories and special highlights on athletes. He also received multiple scholarships, including the James A. Tolbert Scholarship, the EE Baltimore Memorial Scholarship, the Dr. Martin Luther King, Jr. Scholarship, the 2010 AIM-IRS Academic Achievement Scholarship, and the Terry Lee Walker, Jr. Scholarship. Mr. Bolger was also actively involved in his local church along with his family. He volunteered with the church's service team and served with the Habitat for Humanity Team, where he helped build pathways and patio ramps for wheelchair-bound youth and adults. These accolades and many years of community involvement and service, along with his spotless criminal record and strong family support, all indicate that Mr. Bolger has led a pro-social and community-involved life to date and weigh heavily in favor of pretrial release.

Mr. Bolger has absolutely no prior criminal record, and by extension, has of course never failed to appear in Court. What is more, as the Affidavit in Support of the Criminal Complaint provides, Mr. Bolger cooperated with law enforcement and answered the questions posed to him. Following his questioning, he did not attempt to flee or take any other action suggesting either flight risk or danger to the community prior to his arrest. According to the Pretrial Services Report, Mr. Bolger has a PTRA score of 1, which correlates with a 95% likelihood of success when released from pretrial. He poses no risk of flight given his ties to the community. Nothing

about the facts or circumstances of this case supports a finding contrary to that of pretrial services that pretrial release is appropriate and warranted.

### IV. Mr. Bolger's Sentencing Guidelines Range If Convicted At Trial Does Not Support Continued Pretrial Detention.

Finally, the advisory sentencing guidelines in this case also support pretrial release. As stated above, pretrial release is the norm, not the exception. Mr. Bolger is presumed innocent, and his continued detention is only lawful if it is necessary to ensure his appearance or the safety of the community. In this case, pretrial detention may well result in Mr. Bolger spending more time in pretrial custody than he may ultimately face, based on his advisory sentencing guidelines, in the event of a conviction. In the event of a conviction under 18 U.S.C. § 875(c), and applying §§ 2A6.1(a)(1) and 2A6.1(b)(6) of the Sentencing Guidelines Manual, Mr. Bogler's total offense level would be 8, with a Criminal History Category of I, resulting in a guideline range of 0-6 months, even without a guilty plea and acceptance of responsibility credit.[8]

The Court should certainly consider this factor in assessing the necessity of continued detention pending trial, particularly when such detention is contrary to the recommendation of pretrial services, the precedents in similar and more serious cases, and the plethora of conditions of release available to the Court to ensure both Mr. Bolger's appearance and the safety of the community.

---

[8] Even if convicted of both offenses, an preliminary review of the likely guidelines calculation indicates that Mr. Bolger's guidelines would likely result in the same guideline range, applying U.S.S.G. §§ 3D1.2, 3D1.3, and 2B1.1.

## CONCLUSION

For these reasons, Mr. Bolger respectfully requests that this Court authorize his release on conditions pursuant to 18 U.S.C. § 3142(c) and revoke the detention order entered by the magistrate court.

Respectfully Submitted,
Scott Allen Bolger
By Counsel

**ELSAYED LAW PLLC**

BY: __/s/_____
Muhammad Elsayed
Virginia Bar No. 86151
3955 Chain Bridge Road, Floor 2
Fairfax, Virginia 22030
(703) 884-2636
(703) 884-2637 (fax)
me@elsayedlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

____/s/_____
Muhammad Elsayed
Virginia Bar No. 86151
3955 Chain Bridge Road, Floor 2
Fairfax, Virginia 22030
(703) 884-2636
(703) 884-2637 (fax)
me@elsayedlaw.com